# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IRONBURG INVENTIONS LTD.

     *Plaintiff*,

v.

COLLECTIVE MINDS GAMING
CO. LTD.

     *Defendant*.

Civil Action No. 1:16-cv-04110-TWT

# DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     LEGAL STANDARD..........................................................................................2

III.    ARGUMENT .......................................................................................................3

        1.      Certain Constructions Are Necessary To Prevent Ironburg's
                Unreasonable Application of Claim Language........................................3

                1.      The Dimensional Limitations Must Have Concrete Limits.........4

                        a.      Collective Minds' proposals align with the intrinsic
                                record ...............................................................................5

                        b.      Collective Minds' proposals seek to concretely
                                define what is being measured to remove ambiguity
                                for the fact finder .............................................................8

                        c.      Ironburg admitted Collective Minds' proposals are
                                correct .............................................................................10

                2.      A Control Located At/On the Back of the Controller
                        Describes Where the User Engages Said Control.......................10

                3.      Confusing and Ambiguous Claim Language Must be
                        Clarified .....................................................................................12

                4.      An Engaging Surface is a Surface That is Engaged ..................19

                5.      Command Initiation Point is More Than a Physical Position....20

                6.      Front End of the Controller is the Front of the Controller........22

        2.      The Remaining Dispute Has Been Rejected By The Patent Office
                And Should Similarly Be Rejected Here ...............................................24

IV.     CONCLUSION..................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007) .................................................. 4

*Control Resources, Inc. v. Delta Electronics, Inc.*, 133 F. Supp. 2d 121 (D. Mass. 2001) ....................................................................................................... 13

*Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378 (Fed. Cir. 2009) ...................... 5

*GmbH v. Auto. Components Holdings, LLC*, No. 2:10-CV-14097-SFC, 2012 WL 1276003 ........................................................................................................ 13

*Helmsderfer v. Bobrick Washroom Equip., Inc.,* 527 F.3d 1379 (Fed. Cir. 2008) ........................................................................................................................ 24

*K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356 (Fed. Cir. 1999) ................................................... 4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..................................................... 4, 7

*Power–One, Inc. v. Artesyn Techs., Inc.,* 599 F.3d 1343 (Fed. Cir. 2010) .......................... 13

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015) ................................................ 4

## I.    INTRODUCTION

Plaintiff Ironburg Inventions Ltd. ("Ironburg") asserts five patents (collectively, the "Asserted Patents") in this case relating to video game controllers. The patents can be bucketed into two distinct groups. First, the '525, '770, '229, and '688 Patents are all directed to adding paddle-style controls to the back of a standard video game controller (collectively, the "Paddle Patents"). Second, the '450 Patent is directed to making trigger controls on a standard video game controller adjustable to allow the user to customize how trigger commands are generated for a particular video game.

The claim construction disputes also can be easily bucketed into two groups. First, there are a number of terms for which Ironburg seeks to avoid construction entirely, arguing that the plain meaning of the claim language is apparent and construction is unnecessary. In fact, Ironburg is actually applying each of these terms in a manner wholly inconsistent with its plain meaning. Collective Minds has proposed common sense constructions that address Ironburg's skewed application of the claim language.

Second, there is a term that was previously construed by the U.S. Patent and Trademark Office ("Patent Office) in validity proceedings related to the '525 Patent. Ironburg had proposed this construction to avoid a specific prior art

reference, but its proposed construction was wholly unsupported by the claim language and the intrinsic record. Not surprisingly, Ironburg's proposal was rejected by the Patent Office. Whatever justification Ironburg has for continuing to pursue this facially incorrect construction, it should be rejected here as they were by the Patent Office.[1]

## II.    LEGAL STANDARD

Claim construction is a question of law for the court to decide. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015). The goal of construing patent claims is not to rewrite the claims, but to explain to the trier of fact, where necessary, how the terms chosen by the patentee would have been understood by one of ordinary skill in the art. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1365 (Fed. Cir. 1999).

"When construing claims, a court must begin by 'look[ing] to the words of the claims themselves ... to define the scope of the patented invention.'" *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007), *citing Phillips v. AWH*

---

[1]  Many other claim construction disputes from the Patent Office validity proceedings were also being pursued by Ironburg in this litigation until they were withdrawn by email the night before this brief was filed. It is unclear what distinguishes the single remaining dispute from the others, but Collective Minds welcomes all efforts to streamline the *Markman* process in this complicated case with five asserted patents.

*Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. Beyond the claims themselves, courts look principally to the intrinsic evidence of a patent to determine the ordinary and customary meaning of a claim term. This intrinsic record includes the specification and the patent's prosecution history. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*.

The prosecution history consists of the record of the proceedings before the PTO. *Id*. at 1317. Because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes. *Id*.

## III.   ARGUMENT

### 1.   Certain Constructions Are Necessary To Prevent Ironburg's Unreasonable Application of Claim Language

This first set of disputed terms is comprised of claim language that is either ambiguous on its face or that has been applied by Ironburg (as evidenced by its infringement allegations) in a manner inconsistent with a reasonable interpretation

3

of the claim language. Ironburg asks the Court to not construe these terms and phrases at all, hoping to maintain the very ambiguity that claim construction is meant to address.   The Federal Circuit has expressly rejected this approach to claim construction, making clear that "the court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury." *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009). Accordingly, Collective Minds respectfully asks that the Court reject Ironburg's request to maintain ambiguity in the claims and instead provide constructions that resolve the metes and bounds of the asserted claims.

### 1.    The Dimensional Limitations Must Have Concrete Limits

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| top edge<br>• '525 Claims 1, 5, 20<br>• '770 Claims 1, 4, 5 | Plain and ordinary. | uppermost edge of the controller (i.e., the edge furthest from the user when the controller is held horizontally) |
| front/front of the controller<br>• '525 Claim 5, 17 | Plain and ordinary. | front face of the controller (if a curved surface, the measurement uses the tangent of the center point of the front face) |
| medial portion<br>• '770 Claims 4, 5 | Plain and ordinary. | lowest edge of the controller (i.e., the edge closest to the user when the controller is held horizontally) between the handles |

Each of the above disputed phrases appears in claim limitations that recite specific structural relationships. For example, Claim 5 in the '525 Patent recites, "the *top edge* is substantially perpendicular to the *front*." Similarly, Claim 17 of the '525 Patent requires at least one back control that is "substantially parallel to the *front of the controller*." Finally, Claim 4 of the '770 Patent requires a distance measured "between the *top edge* and the *medial portion*."

To make sure that the correct relationships are correctly assessed, it is necessary to provide clarity as to what structural feature is involved. Thus, Collective Minds asks the Court to define these structural features in terms that give clarity to the trier of fact as to what edge or portion is being referenced by the claims. As explained below, Collective Minds' proposals are simple, provide a clear frame of reference for locating the structural feature, align with the intrinsic record, and, in some cases, have already been conceded by Ironburg in separate litigation involving these patents.

> a.   *Collective Minds' proposals align with the intrinsic record*

The Federal Circuit has stressed that "the claims themselves provide substantial guidance as to the meaning of particular claim terms" and that "the specification is always highly relevant to the claim construction analysis." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (internal quotations removed)

(en banc). Here, the claims and specification confirm that Collective Minds' clarifying constructions are accurate in view of the intrinsic record.

Starting with the claim language, Claim 1 of the '770 Patent recites a controller comprising a "back [] opposite the *front*," a "*top edge* [] opposite the bottom edge," and two handles on either side. Claim 1 further recites two "back control(s)" "located at the back of the controller." Claim 3 defines the disputed "convex portion," explaining "the bottom edge includes" "convex portion(s)" that define the handles and "a *medial portion* between [these] "convex portion(s)." Claim 1 of the '525 Patent recites the same layout, reciting a controller where "the back of the controller is opposite the *front* of the controller and the *top edge* is opposite the bottom edge" and wherein the "*front* of the controller" includes a "front control" positions such that "the user's thumb is positioned to operate the front control."

Annotated FIGs 1 and 3 illustrate each of these claimed features:



As annotated, the *top edge* is the uppermost edge of the controller, which is opposite the lowermost bottom edge comprising the *medial portion*. As depicted in FIG. 3, the *medial portion* is part of the lowermost bottom edge that is between the handles grasped by a user. Additionally, the *front face* includes front controls (e.g., 5, 3, 2, 4), which are operated by a user's thumb and are opposite the back of the controller. *See also* Dkt. No. 1-1, *'525 Patent* at 1:16-32 (describing FIG. 1 layout).

Consistent with the claims themselves and the specification, the claimed "top edge" is the "uppermost edge of the controller (i.e., the edge furthest from the user when the controller is held horizontally). Similarly, the "front/front of the controller" is the "front face of the controller (if a curved surface, the measurement uses the tangent of the center point of the front face)." And the "medial portion" is

7

the "lowest edge of the controller (i.e., the edge closest to the user when the controller is held horizontally) between the handles."

> b.   *Collective Minds' proposals seek to concretely define what is being measured to remove ambiguity for the fact finder*

Collective Minds' proposals seek to concretely define these measurement limitations and to remove ambiguity that otherwise exists, as evidenced by Ironburg's infringement allegations. One such ambiguity exists in claim limitations reciting a measurement based on the front of the controller (e.g., "the top edge is substantially perpendicular to the front," "one of the back controls is substantially parallel to the front"). As illustrated above, the front of a controller generally comprises the largest surface area of the entire controller. Further, modern controllers, including those on which the Asserted Patents are based, include curved surfaces for ergonomic purposes. This raises a question: Where on the curved front face of a controller should the recited measurements be taken? The patents themselves provide no clear guidance, so Collective Minds has proposed a logical and straightforward solution. If the front face of the controller is curved, the claimed measurements should be taken at the center point.

The following illustration depicts the issue:



As shown, the green curved front face is generally parallel with the blue elongate member. If the measurement of the front face angle is taken at its center point, the resulting comparison confirms that the front face and elongate member are in fact parallel. But if the measurement of the front face is taken toward the edge of the curved front face, the resulting conclusion is that the front face and elongate member are not remotely parallel. The absurd conclusion that the above-depicted curved front face and elongate member are not parallel can only be reached if ambiguity is permitted as to what point on the surface of the front face forms the basis of the comparison/measurement. To prevent such an absurd result in this litigation, Collective Minds has proposed that the claimed "front/front of the controller" be construed as the "front face of the controller (if a curved surface, the measurement uses the tangent of the center point of the front face)."

c.   *Ironburg admitted Collective Minds' proposals are correct*

Before the instant case was filed, Ironburg sued Valve Corp. (1:15-cv-4219-TWT), asserting the four Paddle Patents. Valve alleged that many of the limitations at issue here were indefinite because a POSITA could not understand their bounds. Ex. A, *Valve Opening Brief* at 15-18. In response, Ironburg insisted a POSITA would understand these clear limitations that are illustrated in the patent figures. Ex. B, *Ironburg Opening Brief* at 12-14. To avoid an indefiniteness finding, Ironburg even proposed constructions. Namely, Ironburg proposed that "top edge" be construed as "the top (uppermost) surface of the controller" and "bottom edge" (which includes the "medial portion") be construed as "the bottom (lowest) surface of the controller." Ex. C, *Joint Markman Chart* at 5. These proposals are nearly identical to Collective Minds' proposals, yet Ironburg now protests that which it previously proposed. These inconsistent positions should be rejected, and the Court should adopt Collective Minds' proposed constructions.

**2.   A Control Located At/On the Back of the Controller Describes Where the User Engages Said Control**

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| located at/on the back of the controller<br>• '525 Claims 1, 20<br>• '770 Claim 1 | Plain and ordinary. | positioned to be engaged by the user at the back of the controller |

The claims of the '525 and '770 Patents each recite controls "located at/on the back of the controller." The intrinsic record is clear that the intended interpretation of this phrase is that the controls are "positioned to be engaged by the user at the back of the controller." The specification consistently describes control location in terms of the place where the user's fingers will engage the control. For example, the Summary of the Invention notes the subject controller "further includes one or more additional controls **located on the back of the controller** in a position **to be operated by the user's other fingers**." Dkt. No. 1-1, '525 Patent at 1:56-58 (emphasis added). The patents even characterize this as the feature that sets the claimed invention apart from other controllers – "the present invention is **particularly advantageous over controllers** according to the prior art **as it comprises** one or more **additional controls located on the back of the controller** in a position to be operated by middle fingers of a user**." *Id*. at 2:21-25 (emphasis added). Further, FIG. 3 clearly illustrates that locating controls at/on the back of the controller means the controls are engaged by the user at the back of the controller:



Figure 3

In sum, the intrinsic record supports Collective Minds' construction that clarifies controls "located on/at the back of the controller" are "positioned to be engaged by the user at the back of the controller."

### 3.   Confusing and Ambiguous Claim Language Must be Clarified

In addition to ensuring claim language is properly interpreted in accordance with the intrinsic record, a key goal of the claim construction process "is to **provide a construction that will be understood by the jury** who might otherwise misunderstand a claim term in the context of the patent specification and prosecution history of the patent." *Recticel Automobilesysteme GmbH v. Auto. Components Holdings, LLC*, No. 2:10-CV-14097-SFC, 2012 WL 1276003, at *2 (E.D. Mich. Apr. 16, 2012) (citing *Power–One, Inc. v. Artesyn Techs., Inc.,* 599 F.3d 1343, 1348 (Fed. Cir. 2010) (emphasis added); *see also Control Resources, Inc. v. Delta Electronics, Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass. 2001) ("It is not

enough simply to construe the claims so that one skilled in the art will have a definitive meaning. The claims must be translated into plain English so that a jury will understand. Thus, accurate words that convey the essence of the invention are needed."). Accordingly, where, as here, the claims themselves use confusing and ambiguous language, the Court should construe the claims in a manner that can be readily understood by a jury.

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| the medial portion is closer to the top edge than a distal end of each of the first handle and the second handle<br>• '770 Claim 5 | Plain and ordinary. | the medial portion is closer to the top edge than the medial portion is to a distal end of each of the first handle and the second handle |

Claim 5 from the '770 Patent recites "the medial portion is closer to the top edge than a distal end of each of the first handle and the second handle." This language is ambiguous and subject to at least two interpretations. Namely, it could either mean (1) that the medial portion is closer to the top edge than the medial portion is to the ends of the handles (i.e., the handle extensions are longer than the body of the controller is tall) or (2) that the medial portion is closer to the top edge than the ends of the handles are to the top edge (i.e., that the handles extend any amount from the controller body).

"Medial portion" is not described in the patent outside the claims themselves, but the claim context establishes that the second interpretation above must be rejected. Namely, Claim 3, from which Claim 5 depends, describes the medial portion as residing between the convex portions that define the left and right handles. In other words, Claim 3 requires two handles that extend from the controller with convex profiles and a medial section between them. In order to comply with this requirement, the medial portion is necessarily closer to the top edge than the ends of the handles are to the top edge. Were it not, the handles would not be convex shaped handles at all, but would instead be concave indentations. Accordingly, the first interpretation should be adopted because the second interpretation is inconsistent with Claim 3.

The patent figures also support adopting the first interpretation. Namely, FIG. 2 illustrates a controller in which the distance between the top edge and medial portion is shorter than the distance between the medial portion and the handle ends. The following annotated FIG. 2 illustrates this arrangement:

14



In sum, the disputed claim language is subject to multiple possible meanings. Because only Collective Minds' proposal is consistent with the claims and with the specification, it should be adopted to clarify the meaning of this limitation.

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| first surface disposed proximate an outer surface of the case<br>• '688 Claim 1 | Plain and ordinary. | first surface proximate an outer surface of the case along the length of the first surface |
| first surface for being disposed proximate an outer surface of the base of the games controller<br>• '688 Claim 30 | Plain and ordinary. | first surface proximate an outer surface of the base of the games controller along the length of the first surface |

The claims of the '688 Patent use confusing language to describe the key point of the '688 Patent invention—back controls that have angled engagement

surfaces (i.e., the surface engaged by the user's finger). Ironburg is attempting to take advantage of this confusing claim language by asserting these claims against back controls that do not remotely have angled engagement surfaces.

Importantly, there is no dispute that the focus of the '688 Patent is angling the engagement surface of back paddle controls. Ironburg's expert, Dr. Stevick, submitted a declaration explaining the '688 Patent disclosure in response to a petition for *Inter Partes* Review filed by Valve. In his declaration, Dr. Stevick explained at length that the '688 Patent described paddle controls "oriented at an angle $\beta$ relative to the surface $S_B$ of the controller," and concluded his overview of the intrinsic record with the following:

> The specification and prosecution history illustrate that the second surface, where the user places his or her finger, is oriented at an angle (i.e. non-parallel) with the surface of the back of the case where the elongate member is mounted.

Ex. D, *Stevick '688 Declaration* at 10-14. The following figures from the '688 Patent illustrate this concept—each shows outer paddle controls 11A and 11D that run along the back of the controller and have angled engagement surfaces:

16



FIGURE 2                    FIGURE 6

Although both parties apparently agree that the '688 Patent claims are directed toward back paddle controls having angled engagement surfaces, Ironburg's allegations conflict with this agreement, so Collective Minds proposes that the claim language should be construed to remove apparent ambiguity. Claim 1 of the '688 Patent recites the following (key language emphasized)[2]:

> the games controller further comprises at least one first additional control located on a back of the case in a position operable by a middle, ring or little finger of the user, the first additional control comprising a first elongate member displaceable by the user to activate a control function, wherein **the first elongate member comprises** a **first surface disposed proximate an outer surface of the case** and the first elongate member comprises a **second surface opposing the first surface**, the second surface being configured **and** arranged to be **non-parallel with** a portion of **the outer surface of the back of the case** to which the first elongate member is mounted

The key components here are (1) a paddle with two opposing surfaces where (2) one surface is "disposed proximate an outer surface of the case" and (3) the other

---

[2] Claim 30 includes substantively identical language with regard to the instant dispute.

surface is non-parallel with the outer surface of the case. Based on infringement allegations in this case, the ambiguity on which Ironburg rests its hopes is the meaning of "a first surface disposed proximate an outer surface of the case."

Put simply, the issue for the Court is what does it mean to have one *surface* of an elongate member "disposed proximate" to another *surface*. Collective Minds proposes a clarifying construction that specifies the first surface is proximate the case "along the length of the first surface." In other words, the elongate member is parallel or close to parallel with the controller along the distance of the elongate member. This is distinct from the concept of an elongate member that is proximate the controller case only at a discrete point. The following illustration depicts this:



On the left, a green elongate member is proximate the blue surface at one discrete point (its base), but Surface 1 is not proximate Surface 2. Conversely, on the right, Surface 1 of the green elongate member is proximate Surface 2 *along its length*.

Consistent with this distinction, the proposed clarifying construction aligns with the intrinsic record and with Ironburg's own expert's description of the '688

claims. Accordingly, it should be adopted to prevent Ironburg from taking advantage of ambiguity that otherwise exists in the claims.

### 4.    An Engaging Surface is a Surface That is Engaged

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| engaging surface • '688 Claim 24 | Plain and ordinary. | surface contacted to engage switch |

Claim 24 of the '688 Patent recites a game controller "wherein a switch mechanism is mounted to a rear panel of the case wherein the switch mechanism comprises an engaging surface, the engaging surface being disposed in an aperture in an outer surface of the rear panel and arranged flush with the outer surface of the rear panel." This dispute comes before the Court because Ironburg asserts Claim 24 against a product where the switch mechanism is disposed in an aperture in the outer surface of the controller case, but engages the back paddle control away from the controller case such that the switch mechanism is unquestionably not flush with the controller case. Collective Minds cannot surmise any read of this claim language that could possibly capture the accused arrangement. Accordingly, Collective Minds proposes the clarifying construction that the "engaging surface" recited herein is the surface contacted to engage the switch.

Other than regurgitation of the claim language, there is no discussion of a switch "engaging surface" in the patent. There are, however, numerous uses of

"engaging surface" with regard to the back controls. And in each of these uses, the '688 Patent consistently describes the "engaging surface" as the surface contacted to engage. *See, e.g.*, Dkt. No. 1-3, *'688 Patent* at 5:66-6:1("A user may displace or depress any one of the paddles . . . by engaging an outer surface thereof."); 7:1-2 ("a user may engage the paddles . . . with the tips of the fingers"). There is no reason to depart from this straightforward meaning of "engaging surface" when used in the context of a switch. Accordingly, the Court should adopt Collective Minds' proposed construction, which is entirely consistent with the use of this term throughout the specification.

### 5. Command Initiation Point is More Than a Physical Position

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| command initiation point<br>• '450 Claim 1 | Plain and ordinary. | point in the throw of the actuator body at which a command is initiated |

The '450 Patent stands apart from the Paddle Patents addressed above. While it also addresses video game controllers, the '450 Patent focuses on adjustable triggers mounted on the front end of a video game controller, rather than paddles mounted on the back. FIG. 2 illustrates the basic structure of the '450 Patent invention. As illustrated below, it depicts a movable actuator body **108** (the

trigger) whose start and stop point can be independently adjusted against strike plate **124** using adjustment screws **118** and **120**:



The patent explains, "dependent upon the video game being played, **it can be necessary to depress the trigger a distance before the trigger initiation point is reached and the command actually acknowledged**." Dkt. No. 1-5, '450 Patent at 1:34-37 (emphasis added). To minimize the amount of movement necessary to initiate a command, the '450 Patent teaches the ability to make "adjustments for the depression of the trigger so that it is already to some degree, 'depressed,' before any contact is actually made with the trigger by the operator (player)." *Id*. at 2:4-7. To maximize efficiency, the trigger can be adjusted all the way to the command initiation point "so that **the command was prompted with any amount of depression** of the trigger body." *Id*. at 4:60-65 (emphasis added).

Although related patents include claims that cover various iterations of the adjustable trigger concept, only this latter scenario—where the trigger is adjusted

all the way to the command initiation point—is claimed in the '450 Patent. Namely, Claim 1 recites a screw and strike plate configured "to adjustably define a command initiation point" and further requires the "command initiation point defines one end of a range of motion of the actuator body." In other words, Claim 1 recites the embodiment described above in which the trigger is adjusted such that a command is prompted by "any amount of depression of the trigger body."

Ironburg's apparent read of the disputed claim language is that "command initiation point" is agnostic as to commands. Its allegations are entirely silent as to where in the trigger throw a command is acknowledged and instead focus solely on the physical trigger adjustment. This overly broad read of the claims cannot be correct because it reads out the term "command" entirely and instead would re-write the claim to require only an adjustment of the physical starting point or the initiation point of the trigger throw. Accordingly, the Court should adopt Collective Minds' proposal that clarifies the "command initiation point" is the "point in the throw of the actuator body at which a command is initiated."

### 6.    Front End of the Controller is the Front of the Controller

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| front end of the controller<br>• '525 Claim 13 | Plain and ordinary. | front of the controller (as defined by Claim 1) |

Claim 13 from the '525 Patent presents an interesting (and confusing) issue. It includes a clear error, which Ironburg implicitly acknowledged in the Valve litigation by dropping this claim. Yet Ironburg refuses to do the same here, and is now attempting to maintain ambiguity in this clearly flawed claim.

As explained above, the claimed controllers include a front (where the thumb controls reside) and a top edge (where the finger-actuated triggers reside). Annotated FIG. 2 below shows that the back paddles are angled slightly toward each other as they near the top edge of the controller:



Figure 3

Claim 13 attempts to claim this arrangement, but states that the paddles "converge towards the **front end** of the controller" rather than towards the top edge of the controller as depicted. Ironburg acknowledged this discrepancy in the Valve litigation and initially proposed that "front end" should be re-written to "top edge." Ex. C, *Joint Markman Chart* at 6. But the parties apparently later reached

agreement and Ironburg dropped its Claim 13 allegations. Ex. A, *Valve Opening Markman Brief* at 1 (noting "Ironburg . . . is withdrawing claim 13"). Confusingly, Ironburg has now reversed course and intends to continue asserting Claim 13 in this litigation despite the clear error.

It is black letter patent law that "[c]ourts cannot rewrite claim language." *Helmsderfer v. Bobrick Washroom Equip., Inc.,* 527 F.3d 1379, 1383 (Fed. Cir. 2008). Here, the patentee drafted Claim 13 to recite a convergence toward the "front end of the controller." Because Claim 13 depends on Claim 1, which already defines the "front of the controller," "front end" cannot be re-written as "top edge" and instead must be construed as "front of the controller (as defined by Claim 1)."

**2.    The Remaining Dispute Has Been Rejected By The Patent Office And Should Similarly Be Rejected Here**

| Claim Term/Phrase | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| elongate members converge towards the front end of the controller with respect to one another<br>• '525 Claim 13 | elongated members coverage towards one another and toward the front of the controller | Plain and ordinary. |

In order to avoid a certain prior art reference in the *Inter Partes* Review proceeding at the Patent Office that ultimately cancelled many claims of the '525 Patent, including Claim 13, Ironburg argued that "elongate members converge

towards the front end of the controller with respect to one another" actually required two distinct convergences rather than the single convergence recited by the claim. Ex. E, *'525 IPR Patent Owner Response* at 20-23 (explaining that the claim language should be construed to require two distinct paddle convergences—one toward each other and a second toward the "front of the controller"). This convoluted construction is not remotely supported by the intrinsic record, nor is it a reasonable read of the claim language itself, which recites only a single convergence.

Not surprisingly, the Patent Office rejected Ironburg's proposal:

> **Claim 13 only required convergence between the elongate members without requiring convergence between each of the elongate members and the front of the outer case**. Consistent with that interpretation, the '525 patent does not contain any description of convergence between each said elongate member and the front of the controller. Accordingly, **Patent Owner's assertion that claim 13 requires the elongate members to converge towards the front of the controller is not persuasive**.

Ex. F, *Final Written Decision* at 23 (emphasis added). This Court should rule consistently with the Patent Office that Claim 13 is clear on its face and does not require two distinct convergences.

## IV.   CONCLUSION

Collective Minds respectfully requests that the Court adopt its proposed constructions.

Dated: October 18, 2017                    Respectfully submitted,

                                           HILL, KERTSCHER & WHARTON, LLP

                                           /s/ Steven G. Hill
                                           Steven G. Hill, GA Bar No. 354658
                                           Martha L. Decker, GA Bar No. 420867
                                           3350 Riverwood Parkway, Suite 800
                                           Atlanta, Georgia 30339
                                           Telephone: (770) 953-0995
                                           Facsimile: (770) 953-1358
                                           Email:      sgh@hkw-law.com
                                                       md@hkw-law.com

                                           OF COUNSEL:

                                           ERISE IP, P.A.
                                           Eric A. Buresh, admitted *pro hac vice*
                                           6201 College Blvd., Suite 300
                                           Overland Park, KS 66211
                                           Telephone: (913) 777-5600
                                           Facsimile: (913) 777-5601
                                           Email:      eric.buresh@eriseip.com

                                           ERISE IP, P.A.
                                           Paul R. Hart, admitted *pro hac vice*
                                           Michelle A. Callaghan, admitted *pro hac vice*
                                           5600 Greenwood Plaza Blvd., Suite 200
                                           Greenwood Village, CO 80111
                                           Telephone: (913) 777-5600
                                           Facsimile: (913) 777-5601
                                           Email:      paul.hart@eriseip.com
                                                       michelle.callaghan@eriseip.com

                                           *Attorneys for Defendant Collective*
                                           *Minds Gaming Co. Ltd*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D**

Pursuant to LR 7.1(D), the undersigned counsel certifies that this document has been prepared using Times New Roman 14-point font, as permitted under LR 5.1(C).

Dated: <u>October 18, 2017</u>          Respectfully submitted,

<u>/s/ *Steven G. Hill*</u>
Steven G. Hill
GA Bar No. 354658

*Attorney for Defendant*
*Collective Minds Gaming Co. Ltd.*

27

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 18, 2017, a true and correct copy of the **DEFENDANT COLLECTIVE MINDS GAMING CO. LTD.'S OPENING CLAIM CONSTRUCTION BRIEF** was filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.


Dated: <u>October 18, 2017</u>                    Respectfully submitted,

                                                 <u>/s/ Steven G. Hill</u>
                                                 Steven G. Hill
                                                 Georgia Bar No. 354658

                                                 *Attorney for Defendant*
                                                 *Collective Minds Gaming Co. Ltd.*